H. C. SHEPHERD v. H. H. KENNEDY, et al.

Western Section. April 3, 1930.

Petition for Certiorari denied by Supreme Court, June 28, 1930.

J. F. Williamson, colored, and B. F. Booth, colored, of Memphis, for appellee.

C. M. Bryan and W. H. Foote, colored, of Memphis, for appellant.

OWEN, J. The defendants H. H. Kennedy and W. H. Foote have appealed from a decree sustaining complainant's injunction

374

bill and making the injunction perpetual, which bill was filed in the Chancery Court of Shelby county, wherein the complainant alleged that the defendants were seeking to have him pay $898.77 which complainant insisted the defendants were not entitled to, and that said fund was in the hands of the Union & Planters Bank & Trust Company, of Memphis, and it was sought to enjoin the Union & Planters Bank & Trust Company from paying over said $898.77 to the defendants. Said Bank was made a party; it answered by stating it did not know the facts as to the controversy but had the money and paid it into court, and it is now out of the litigation.

The complainant Shepherd alleged that he was the owner of a certain tract of land in Shelby county which was being used for cemetery purposes; that he had executed a mortgage on this tract of land in November, 1924, for the purpose of securing twelve notes, two of said notes falling due on the 13th of November for a period of six years. For the first five years there were five notes for $1000 each and for the sixth year there was a note for $6800. In addition to this, the complainant executed six notes, described as "interest notes" and the first interest note matured November 13, 1925, and was for $708. Thereafter, on the 13th of each November, an interest note matured, but said interest notes were reduced, the last of said notes being for $408. Complainant alleged that one of the notes for $1000 became due on November 13, 1928; that he did not pay this note but paid the interest note which matured on that date. He claimed that the defendant Kennedy agreed to an extension of time as to the $1000 note. He claimed that on the 2d of January, 1929, he went to the Union & Planters Bank & Trust Company to take up the $1000 note maturing November 13, 1928; that he was advised the notes had been withdrawn and that the defendant Kennedy was insisting that all of the notes had matured. Soon thereafter the complainant filed a bill against Kennedy, attempting to enjoin him (Kennedy) from foreclosing his trust deed, and setting up an agreement with Kennedy for an extension of time on the $1000 note, the only note that was then due. The Union & Planters Bank & Trust Company was the trustee in the deed of trust that the complainant had executed to secure these twelve notes for the amounts heretofore stated. The notes were payable to bearer. The complainant was unsuccessful in the injunction suit wherein he sought to set up an extension on the part of the defendant and the injunction was dissolved. Thereupon, the defendant Kennedy instructed the Union & Planters Bank & Trust Company to advertise the property. The complainant sought to pay the amount that was claimed by the defendant. It was understood that $9011.68 was the amount due under the mortgage so far as principal and interest were concerned, and the advertising cost incurred by the trustee. However, the trustee informed the complainant, the maker of the mortgage,

that the defendant Kennedy would not surrender said notes unless the complainant paid Kennedy or his attorney W. H. Foote $898.77, which was ten per cent of the amount due under the mortgage. Complainant refused to pay this sum to the bank for the defendants, but deposited the $898.77 with the trustee Union & Planters Bank & Trust Company, notifying the trustee that he still claimed the money and would take steps to protect himself and prohibit the trustee from paying the money over to the defendants.

The defendants denied that they had agreed for any extension, insisted that they had a right to declare the indebtedness due; that complainant had been allowed until February 1, 1929, to pay it and that the complainant had failed to pay any sum on February 1, 1929.

The defendant Kennedy alleged in his answer that he had employed W. H. Foote to advise him as to his rights under the deed of trust, and to defend the suit against him, and when said litigation was commenced W. H. Foote did defend him, obtaining a dissolution of the injunction and also appearing and filing a brief which the complainant in the first suit sought to procure a certiorari and supersedeas. The Chancellor decreed in favor of the complainant.

The facts in this law suit are practically uncontroverted. Chancellor Ketchum has filed an able opinion in the cause, which we are pleased to set out in this opinion, as follows:

"1. This suit involves an attorney's fee for services rendered in protecting the rights of the mortgagee under a trust deed. In the first instance Shepherd, the mortgagor, sued Kennedy, the mortgagee, and the Union & Planters Bank & Trust Company, the trustee in the trust deed, to enjoin the advertisement and sale of his property under the trust deed, alleging that Kennedy had granted him an extension of time on a principal note of $1000 due November 13, 1928; and that when he went to the bank to pay said notes on January 2, 1929, it had been withdrawn from the bank; that he then went to see Kennedy and offered to pay him, but that Kennedy refused to accept payment of the note and interest then due, and declared the entire indebtedness amounting to about $9000 due and payable, and notified him that unless the entire indebtedness was paid by February 1, 1929, he would have the property advertised for sale under the trust deed.

"Notice of this application for an injunction was given to the defendants, and Kennedy filed his sworn answer denying the material allegations of the bill, and on the hearing the application for an injunction was denied, and the bill was dismissed.

"2. Therefore Kennedy instructed the Union & Planters Bank & Trust Company, the trustee under the trust deed, to advertise the property for sale under the trust deed, and this was done. The complainant then went to Kennedy and offered to pay the entire indebtedness, principal and interest, and Kennedy declined to ac-

cept it unless he would also pay an addition sum of $898.77 as attorney's fees; complainant thereupon tendered the sum of $9011.68 to W. W. Hughes, Trust Officer of the Union & Planters Bank & Trust Company, this being the amount of the indebtedness, principal and interest to that date, and the expenses of advertising, and this tender was refused under instructions of W. H. Foote, Kennedy's attorney, to refuse it unless complainant would also pay the said additional sum of $898.77 as attorney's fee.

"3. The complainant thereupon filed the present bill setting up the foregoing facts and alleging the payment of both sums to the Union & Planters Bank & Trust Company, trustee, and obtained an injunction restraining it from paying over the said sum of $898.77 to Kennedy or to Foote, his attorney, until their right to said attorney's fee could be adjudicated; and contemporaneously with said payment to the Trust Office of the bank, this injunction was served upon him. The bank thereafter answered the bill and paid the sum of $898.77 into the registry of the court.

"4. Neither the notes nor the trust deed provide on their face for the payment of any attorney's fee if the notes are not paid when due and if placed in the hands of an attorney for collection.

"5. The trust deed is on the form then in use by the Union & Planters Bank & Trust Company, and contain a provision that the mortgagors should pay the taxes, keep the property insured for the benefit of the mortgagee, and keep and maintain the property in good condition and repair; 'and will pay such expenses and fees as may be necessary in the protection of the property and the maintenance and execution of this trust,' and provides that the holder of the indebtedness may in his discretion advance such sums as may be proper 'to satisfy taxes, maintain insurance and repairs, and protect and preserve the property,' and such amounts so paid shall be held and treated as a part of the expense of administering the trust.

"It is then provided that if the grantors shall pay the indebtedness secured when due, 'and shall pay such sums as shall be necessary to discharge taxes and maintain insurance and repairs; and the costs, fees and expenses of making and executing this trust,' then the conveyance shall be void, etc. But if they shall fail to pay any part of said indebtedness, principal or interest when due, or to pay taxes, or to maintain insurance or repairs, 'or the necessary expense of protecting and executing this trust,' then the entire indebtedness shall become immediately due and payable at the option of the owner thereof, and the trustee shall advertise, and sell; and the proceeds of sale shall be applied.

" '(1st) to payment of the expenses of making, maintaining and executing this trust, the protection of the property, including the expense of any litigation and attorney's fees, and the usual com-

missions to the trustees' (2) to the payment of the indebtedness secured, etc.

"6. The fee claimed by the defendant is for services rendered by his counsel in defending the first suit and in protecting and enforcing his rights under the trust deed. The trustee did not employ counsel, and indeed had no occasion to do so, as the first suit was brought before any steps were taken looking to a foreclosure. The defendant has not paid the fee of his attorney and there is no proof that he has obligated himself to pay it if it cannot be collected out of complainant. No question has been raised as to the reasonableness of the fee.

"7. The liability or non-liability of the complainant for the fees of defendant's attorney must be determined by the provisions of the trust deed, the material portions of which have been quoted above. He agrees to pay 'such expenses and fees as may be necessary in the protection of the property, and the maintenance and execution of the trust;' and the mortgage will be void if he shall pay the debt, taxes, insurance premium, repairs, 'and the costs, fees and expenses of making, enforcing and executing the trust;' but with power of sale if defendant (default) be made in the payment of the indebtedness as it matures, or in the payment of taxes, insurance premiums, repairs, 'or the necessary expense of protecting and executing this trust.' "

"8. The question then is whether this fee was incurred in the maintenance and protection of the trust, on behalf of the complainant it is insisted with much earnestness that no attack was made upon the trust deed; that he did not deny liability on the notes secured thereby, but admitted liability thereon; that he did not even question the acceleration clause; and that he sought the injunction solely upon the ground that the defendant had violated his agreement not to accelerate the maturity of the entire indebtedness.

"While the question is not without its difficulties, I am inclined to this view of the matter and have reached the conclusion that complainant is not liable for the fee of defendant's solicitor, and that he is entitled to have the injunction made permanent, and to have the fund in court paid to him.

"There was no hearing on the merits in the original suit, and no adjudication that complainant's contention there made were not made in good faith, and if they were made in good faith, the filing of the bill did not constitute an attack upon the trust deed, or a denial that the complainant had the right under the terms of the trust deed to accelerate the maturity of the indebtedness secured thereby; on the other hand recognizing the validity of the acceleration clause, the sole contention was that the defendant had waived the benefit of it in this particular instance, and had agreed to allow an extension of the time on the principal note due in November,

1928; and had violated the agreement by declaring the entire indebtedness due and payable.

"9. The cases cited by counsel throw little light on this controversy; Read v. Gas Light Co., 107 Tenn., 433, amd Jackson-Lyle's Plumbing Co. v. Douglas, 3 Tenn. App., 210, deal with the right of the trustee to employ counsel to protect the right of the beneficiaries of the trust and to have their fees paid by the mortgagors or out of the trust fund; Goodman v. Palmer, 137 Tenn., 556, deals with the question of interest on pecuniary legacies as against the claim of residuary legatee; and in Spruce Pine Co. v. Black Mountain Railway, 139 Tenn., 248, an attorney's fee was allowed for the foreclosure of collaterals where the note contained a provision for the payment of an attorney's fee.

"It is well settled that attorney's fees provided for in a mortgage note are a constituent part of the obligation secured, and are secured by the mortgage. Strong v. Efficiency Apartment Corporation, 17 S. W. (2d), page 1, and cases there cited. But that is not the question now before us; and it is significant in this connection, that in a new form of trust deed now in use by the Union & Planters Bank & Trust Company, provision has been inserted for the payment of an attorney's fee if the notes be placed in the hands of an attorney for collection by suit or otherwise.

"A decree may be entered making the injunction permanent, directing the payment of the fund in court to the complainant and taxing the defendant with the costs.

"M. C. Ketchum, Chancellor."

The defendants duly excepted, prayed and perfected an appeal and have assigned five errors in this court. These errors raise the the following propositions:

1. The court erred in holding that the defendant was not entitled to attorneys fees for protecting the trust against the attack made by the bill filed to enjoin the foreclosure.

2. The trial court erred in holding that the injunction should be made perpetual.

3. The trial court erred in holding that the sum of $898.77 should not be turned over to the defendants.

4. The trial court erred in rendering a decree for the complainant against the defendants, and assessing the defendants with cost.

The defendants insist that they are entitled to attorneys' fees by virtue of the following conditions in the mortgage:

(1) "The grantor covenants that he 'will protect the improvements on said property by proper repairs, and maintain them in good order and condition, will pay such expenses and fees as may be necessary in the protection of the property and the maintenance and execution of this trust.'" (2) "If the parties of the first part

shall pay said indebtedness when due, and shall pay such sums as shall be necessary to discharge taxes and maintan insurance and repairs, and the costs, fees and expenses of making, enforcing and executing this trust, when they shall severally be due and payable, then this conveyance shall become void,'' etc. (3) ''The proceeds of any sale shall be applied as follows: first, to the payment of the expenses of making, maintaining and executing this trust, the protection of the property, including the expense of any litigation and reasonable lawyer's fees, and the usual commissions to the trustees.''

It appears to be conceded that Attorney Foote's fee should be ten per cent of the debt, so there is no dispute upon the amount of the fee sought to be recovered, but the sole question is whether the complainant is liable. Neither the notes nor the trust deed provided for attorneys fees in case of a default in the payment of the indebtedness secured. The trustee employed no attorney to protect the property or the indebtedness secured. The complainant employed Attorney W. H. Foote to defend a suit in which the complainant was seeking to establish a contract wherein he alleged that the defendant had agreed to an extension of time, and, therefore, after such an extension had been granted complainant was not entitled to foreclose. There was never any attack upon the trust deed or upon the amount of the debt the trust deed secured.

We have examined all of the authorities cited by learned counsel in their brief on behalf of appellants, but these authorities do not support the contention that a beneficiary in a mortgage can have the mortgagor to pay the mortgagee, or the attorney whom the beneficiary employs to defend a suit instituted wherein the mortgagor is seeking an extension of time on the ground that the beneficiary has agreed to extend the time of the payment of the debt. That is an outside matter, and not an attack upon the validity of the trust deed, or the indebtedness therein secured and does not call for any any expenses and fees to be incurred in the protection of the property and the maintenance and execution of the trust. Whatever fees and expenses the trustee incurred in advertising the property and looking towards the enforcement and execution of the trust deed that the complainant had executed was paid by the complainant.

We think that all attorneys should be paid for their services but we cannot hold that the complainant is liable to the attorney who represented the defendant in the manner and under the circumstances as reflected in this transcript.

It results that all of the assignments of error are overruled and disallowed and the judgment of the lower court is affirmed. It appearing that there is a fund in the hands of the Clerk and Master of the Chancery Court of Shelby county, which fund was paid in by the Union & Planters Bank & Trust Company, this cause will be re-

manded to said Chancery Court for the purpose of paying out said fund to the parties entitled thereto. The appellants and surety on appeal bond will pay all the cost of the cause, including the cost of the appeal.

Heiskell and Senter, JJ., concur.